United States District Court
Middle District of Pennsylvania

ANGEL M. PAGAN,                          )
VLADIMIR CRUZ,                           )
EDWIN MICHAEL BROWN.                     )
JAIME SANCHEZ,                           )
  AND OTHER SIMILARLY SITUATED           )     Civil Case No. **1:18 CV 2317**
  INDIVIDUALS,                           )
              Plaintiff(s),              )
                                         )
      v.                                 )              **FILED**
                                         )            **SCRANTON**
Douglas K. White, in his offical         )             DEC 0 4 2018
capacity as Warden LSCI Allenwood;       )
J. Ray Ormond, in his official capacity  )       PER
  as Regional Director - Northeast Region,)
              Defendant(s).              )         DEPUTY CLERK

Complaint for Declaratory Judgment and Injunctive Relief

The Plaintiff(s), Angel M. Pagan, Vladimir Cruz, Edwin Michael Brown,
Jaime Sanchez, and other similarly situated individuals seeks declaratory
and injunctive relief against Defendant Douglas K. White in his official
capacity as Warden, and J. Ray Ormond in his official capacity as Regional
Director for the Northeast Regional Office of the BOP for acting in excess
of statutory authority and abuse of authority.


NATURE OF ACTION

1.  This is an action brought under the Administrative Procedures Act
("APA"), the Declaratory Judgment Act, 28 U.S.C. § 2201, Rule 65 of the Federal
Rule of Civil Procedure (Fed.R.Civ.P.) for injunctive relief to remedy the
defendants pattern and practice of ultra vires conduct in excess of statutory
and regulatory authority or alternatively a Writ of Habeas Corpus pursuant
to 28 U.S.C. § 2241.


2.  The Defendants have engaged in a pattern and practice to submit false
documentation to other BOP offices to induce them into acting and placing
management variable on inmates to force them to do gate pass contrary to BOP

1

policy. The Defendants has engaged in a practice and pattern of threatening inmates to lock them up in the Special Housing Unit ("SHU") when the pose no serious threat if they refuse to do gate pass. Such practice is intended to deny inmates fair consideration to lower custody levels, deprivation of participation in incentive programs which could earn earlier release and is contrary to statutory authority under 18 U.S.C. § 3621(b), § 3624 and 34 U.S.C. § 60541.

3. To redress irreparable harm of their rights, Plaintiffs seek declaratory and injunctive relief.

## Parties

4. Plaintiff Angel M. Pagan, is an individual currently in the custody of the Acting Attorney General as delegated to the Federal Bureau of Prisons currently located at LSCI Allenwood.

5. Plaintiff Vladimir Cruz is an individual currently in the custody of the Acting Attorney General as delegated to the Federal Bureau of Prisons currently located at LSCI Allenwood.

6. Edwin Michael Brown is an individual currently in the custody of the Acting Attorney general as delegated to the Federal Bureau of Prisons currently located at LSCI Allenwood.

7. Jaime Sanchez is an individual currently in the custody of the Acting Attorney General as delegated to the Federal Bureau of Prisons currently located at LSCI Allenwood.

8. Defendant Douglas K. White is the Warden at LSCI Allenwood, a federal correctional institution and has been delegated supervisory authority and power over the day to day operation of all aspects and management of LSCI Allenwood and its personnel. As Warden, he is responsible for ensuring compliance with all establish rules, regulations, policy, ethical rules, laws and the Constitution of the United States.

9. Defendant J. Ray Ormond is the Regional Director of the Northeast Regional Office for the BOP and supervisor for Defendant Douglas K. White. As Regional Director, Ormond has been delegated supervisory authority and power over the day to day oversight, and management of all the institutions in the Northeast Region including LSCI Allenwood. As Regional Director, Ormond is responsible for ensuring that the Warden, and personnel adhere to the policies, procedures, rules, regulations, laws and U.S. Constitution are followed.

## Jurisdiction and Venue

10. This Court has jurisdiction over this action pursuant to the APA, 5 U.S.C. $ 701, et seq, 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2241 and the Declaratory Judgment Act, 28 U.S.C. § 2201.

11. This Court has authority to grant declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 65 of Fed.R.Civ.P.

12. This Court has authority to grant injunctive relief in this action pursuant to 5 U.s.C. § 702 and Rule 65 of Fed.R.Civ.P.

13. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) because a substantive part of the acts and omissions giving rise to Plaintiff claim occurred and was to occur in this District.

14. Plaintiff Angel M. Pagan has exhausted all administrative remedies as to the issue raised.

## Factual Allegations

15. Pursuant to 18 U.S.C. § 3621(b) the Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penaly or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the prisoner was connected, that the Bureau determines to be appropriate and suitable considering ---

3

(1) the resources of the facility contemplated,
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--
    (A) concerning the purposes for which the sentence to imprisonment
    was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate;
    and
(5) any pertinent policy statement issued by the Sentencing Commission
pursuant to 994(a)(2) of Title 28.

In designating the place of imprisonment or making transfers under this subsection there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

16. Pursuant to 18 U.S.C. § 4042(a)(6)(E); (7)(E), the Defendants owe a duty of care and protection to the plaintiff(s).

17. Pursuant to 18 U.S.C. § 3624(c) a prisoner is eligible for fair consideration of up to 12 months in an RRC, and or a combination of 6 months RRC and 6 months home confinement.

18. Pursuant to PS 5100.08 a prisoner is eligible for fair consideration under 18 U.S.C. 3621(b) for a transfer after 18 months clear conduct, called a near release transfer. At anytime the Bureau may also transfer a prisoner when they are no longer suitable based on factors outlined in PS 5100.08, such as custody points 0-11 makes the inmates eligible for camp status, a less harsher form of imprisonment vs. a Low like Allenwood with a fence which are for inmates who score 12-15 points on their custody scoring or have more than 10 years remaining on their sentence absent a waiver.

19. No part of BOP policy, statutory, or regulatory allows for the arbitrary and capricious decisions of the Defendants to place inmates on gate pass and deny them a transfer, participating in incentive programs, or RRC. Such practices is a violation of the law, BOP policy and federal regulations.

4

19. The Defendant Douglas K. White ("White") created "Gate pass" without authority and permission from the Regional Director or Central Office.

## GatePass

20. LSCI Allenwood utilizes inmates from the Camp at Lewisburg to handle and address issues related to maintenance and other functions at the complex for Allenwood as a result of the closure of the camp at Allenwood some years ago.

21. The BOP, federal regulations, nor statutory authority refers to a work assignment or program called Gate pass at a Low Custody institution.

22. On July 20, 2018 Plaintiff submitted an Inmate Request to the Case Manager C. Nevil requesting to know why he cannot be transferred to a Camp. See Exh. 'A'. According to Case Manager C. Nevil he was put on a waiting list for gate pass. As demonstrated by Exhibit A at the bottom half of the page the case manager admitted putting a management variable request to keep Plaintiff at Allenwood to deny his consideration under 3621(b) for transfer to a camp even though BOP policy advises that inmates should be allowed a minimum of 60 days in a camp before going to an RRC or community confinement facility for transitional pruposes and programming. See BOP PS 7310.04.

23. Plaintiff Pagan never requested, volunterred, or was consulted about gate pass to the institution takeing actions contrary to BOP policy. Under 18 U.S.C. § 3621(b) does not contemplate gate pass or waiting lists. Plaintiff Pagan has medical reasons for not doing gatepass, yet he is being forced to.

24. Plaintiffs have requested a copy of the policy, job descriptions, responsibility, safety instructions for gate pass. After repeated requests to the Defendants, and after admitting none exists, they now claim it cannot be disclosed because of security, a misrepresentation due to the non-existence of such a policy.

25. On August 7, 2018 Plaintiff Pagan submitted a BP-8 requesting a transfer to a camp. Exh. 'B'. As demonstrated by Exhibit B, the same handwriting confirmed a waiting list for a work detail establishing there was no institution need for gate pass, an the action to not give fair consideration as arbitrary and

capricious and mentions nothing of fair consideration under § 3621(b).

26. On August 9, 2018 Plaintiff Pagan filed a BP-9 with the Warden's Office in which the response was prepared by the Unit Manager. Contrary to the Warden's representation, I have never expressed a desire to work and earn money which would aid with my upcoming release. The Defendants cite no policy or statutory, orregulatory authority for gate pass. See Exh. 'C'.

27. On August 25, 2018 Plaintiff Pagan filed a BP-10 with Defendant Ormond. See Exh. 'D'. Instead of conducting a proper investigation into the abuse of authority and misrepresentation on a government form to place a management variable and deny Pagan transfer to a Camp to participate in incentive programs and or prepare for release, Ormond attempts to recharacterize Pagan's issue.

28. Exhibit 'E' demonstrates Mr. Pagan's rebuttal of the "Work Cadre". Obviously this management variable is not applicable, first, when you put someone on a waiting list, there cannot be a sustainable arugment of a "institutional need," and secondly, there are available inmates from Lewisburg CAMP who can address any institution need that do not require the use of misrepresentation of facts to have a management varibale assigned to them.

29. On October 5, 2018 Plaintiff Pagan appealed to the Office of Legal counsel for relief. See Exh. 'F'. Insteading of addressing the issues raised, simply concured with the Warden and Regional Director's abuse of authority and acting contrary to BOP Policy and 3621(b). Seemingly, the Office of Legal counsel believes it is appropriate for the institution to use false information to apply management variable which is a due process violation.

30. On November 15, 2018 after being repeatedly lied to by his Case Manager about his halfway house date, Plaintiff Pagan sent a message to the case management coordinator. See Exhibit 'G'. According to the admission of the case management coordinator, I was approved for gate pass which I never applied for on April 20, 2018 and waited to start until August 13, 2018. This was after Pagan initiated his administrative remedy in order for the defendants to cover-up their illegal acts and omissions. As further demonstrated, I will not be able to transfer to a camp for 60 days prior to release to an RRC because of the arbitrary and capricious, ultra vires conduct of the defendants.

## Defendant's White's Threats

31. The Defendants created an illegal custody level called gatepass. In creating gate pass the Defendant developed no policy statement or guidance on the matter which has resulted in inmates getting seriously injured.* The Defendant was required to obtain approval; for any program prior to implementation from the BOP Central Office and Regional Director. Despite requests for the approval; notice, none have been produced.

32. The Defendant and his staff have repeatedly misrepresented that there is a policy and because of security, they cannot disclose it. Yet on countless occassions they have already admitted it does not exists.

33. The Defendant and his staff prepare false and misleading paperwork in furtherance of the unauthorized gatepass to have the Designation Center in ;Grand Praire assign unnecessary management variables so these and other inmates cannot transfer to another institution or lesser custody, in which there are other liberty matters at stake, in accordance with 18 U.S.C . 3621(b).

34. As part of the Defendant's scheme, they actively deny inmates access to the Form 409 which is part of the inmate central file and disclosable. They falsely inform inmates that a FOIA request needs to be filed which takes up to 9 months, yet BOP policy ambiguously state that inmates do not need to submit a FOIA request for access to documents in their Inmate Central File. See PS 1351.05.

35. As part of the gatepass activity, inmates are required to strip at least four to five times a day, go through a body scanner the same amount of time which has the potential of causing medical issues due to excessive exposure to radiation from the machines.

### COUNT I: VIOLATION of 18 U.S.C. § 3624

36. Plaintiffs reallege paragraphs 1 through 35 as if fully stated herein.

37. The current policy and program statement implement and adhered to by the federal Bureau of Prisons of placing inmates on gatepass deprives them of being CONSIDERED individually for placement in a Residential Reentryt Center or transititional services under BOP policy 7310.04 as mandated by section 3624(c)

* When inmates are injured, the institution issues incident reports/ disciplinary action against the inmates due to staff negligence. I/M Lewis; Martin.

or to earn incentives which could result in a shorter term of imprisonment under 34 U.S.C. § 60541 and 18 U.S.C. § 3621(e).

38. The Defendant's Gatepass activity deprives inmates of their statutory rights under 3624(c) and those contained with the BOP statements.

39. The Defendants know, should know, or has consciously avoided knowing that its gatepass policy of improperly falsifying documents to deprive them of the opportunity to earn incentive time off or extended stay at an RRC.

40. Without the intervention of the United States District Court in the maner and of the kind prayed for herein, the Defendants will be allowed to knowingly and willfully violated the plaintiffs statutory right to fair consideration for participation in incentive programs which could earn early time off, extended time in an RRC or transititional services.

## COUNT II; VIOLATION OF APA

41. Plaintiff re-allege and incorporate by reference each and every allegation contained in paragraph 1 through 40.

42. Defendant's failure to go through the process of obtaining permission for gatepass, the misuse of the BOP designation system with false information and misrepresentation, the deprivation of consideration for participation in incentive programs and fair consideration of transfers causes Plaintiffs significant pain and suffering by depriving them of their liberty and other liberty matters.

43. Defendant's application of the gatepass against the Plaintiff's and misuse of authority against them exceeds the Defendant's constitutional and statutory authority in violation of 5 U.S.C. § 706(2)(A)-(D).

44. As proximate result of the Defendant's staturoy and constitutional violations, Plaintiffs are suffering and will continue to suffer a significant deprivation of their liberty without due process of law. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein. The injunctive and declaratory relief sought by Plaintiffs is necessary to prevent continued and future injury.

## COUNT III: VIOLATION OF FOURTH AMENDMENT

45. Plaintiff re-alleges and incorporate by reference each and every allegation contained in Paragraphs 1 through 44.

46. Defendant's use of excessive searchs by forcing inmates to strip four to five times a day, then go through a full body scanner exposing defendants to radiation is a violation of Plaintiffs Fourth Amendment right to be free of excessive searches as guaranteed by the 4th Amendment.

47. The excessive searches of going through a fully body scanner 4 to 5 times per day, and having to strip any # of times per day is a deprivation of Plaintiff' Fifth Amendment right to due process as Plaintiff's have no means of challenging the abuse of authority, as the protections against agency action is arbitrary, capricious, in bad faith and contrary to law.

48. The strip searches was conducted without probable cause or reason to believe that any contraband, dangerous material or incriminating objects or weapons would be found. Thus, each strip search constitutes an unreasonable search in violation of the Fourth Amendment and Fourteenth Amendment of the United States Constitution.

49. Plaintiffs have and will continue to suffer irreparable harm and has no adequate remedy at law.

50. The Defendants will continue to engage in strip searches unless enjoined from doing os in the future or stopping the gatepass program.

51. Plaintiffs is entitled to injunctive relief enjoing Defendants from continuing their unconstitutional and unlawful pattern and practice of conduct as alleged in this complaint.

52. Defendants unconstitutional and unlawful conduct will also adversely affect the interests of numerous prisoners without advancing public interests.

53. Defendant's have no protectable interest in the continuation of their unlawful and unlawful conduct, as they have inmates at Lewisburg Camp who are

already out custody and do not have to go through this humilation and invasion of privacy after being forced onto gate pass.

## Declaratory Relief

54. Pursuant to Section 2201(a) of Title 21, a judgment declaring:

1. That 18 USC 3624, as a amended by the SCA, confers upon the plaintiff's a right to be fairly considered, individually, for placement in an appropriate BOP RRC; and to be able to earn incentives such as additional time under 34 U.S.C. 60541 and be eligibe for transfers under 3621(b) at any time.

2. that the Defendant's policy of putting them on gatepass constructively, violates 3621(b), 3624 and 34 U.S.C. 60541.

3. That the Defendants do not have the discretion to NOT perform an individual assessment of Plaintiff's placement under 3621(b), 3624 and 34 USC 60541.

4. That Plaintiff has exhausted administrative remedies.

5. The use of Gatepass to deny inmates fair consideration for transfers, denial of transfer to an RRC, or to participate in incentive programs and deprivation of other matters affecting and impacting liberty in violation of the laws or Constitution of the Untied States.

6. That the defendants gatepass activity violates prisoners Fourth and Fourteenth Amendment from illegal searches and or excessive searches were no probable cause exists.

## COUNT IV: DECLARATORY AND INJUNCTIVE RELIEF

54. Plaintiff re-alleges and incorporate by reference each and every allegation contained in paragraphs 1 through 54.

55. The Declaratory Judgment Act, 28 USC 2201 grants this Court authority

to declare the Plaintiffs legal rights when an actual controversy exists.

56. Plaintiff and defendants have adverse legal interests that are of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment in accordance with 28 USC 2201.

57. For the reasons above, Plaintiff is entitled to a declaration of their rights.

58. A failure to enjoin the Defendants unconstitutional and unlawful conduct has and will continue to cause the Plaintiff to suffer injury in that it will result in the deprivation of their 4th and 14th Amendment rights and protections against agency action that is arbitrary, capricious, in bad faith, or contrary to law.

59. No adequate remedy at law exists.

## INJUNCTIVE RELIEF

59. Pursuant to Rule 65, Fed.R.Civ.P. the Plaintiffs requests an injunbction ordering the Defendants to cease the gate pass program/ activity and refrain from the use of false information and misrepresentations to apply management variables to inmates as well as; to cease denying inmates access to their Form 409 and Form 218 which are disclosable documents from their Inmate Central File, and to prevent the violation of the Plaintiffs Fourth Amendment rights to illegal searches and seizure without probable cause or justification.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully request that the Court:
a. appoint counsel to represent the Plaintiffs;
b. alternatively , to permit the action to proceed as a habeas;
c. issue a judgment declaring the Defendants practices, policies, acts and omissions described herein as applied to the Plaintiffs and other prisoners are unlawful and exceed defendant's constitutional and statutory authority in violation of 5 USC 706(2)(A)-(D).

d. issue a judgment declaring that Defendants practices, acts and omissions violate Plaintiff(s) Fourth Amendment right to be free from illegal search and seizure.

e.  Issue a judgment declaring that the Defendants practices, acts, and omissions violates 18 U.S.C. § 3624 and 34 U.S.C. § 60541, by denying inmates the ability to earn incentives such as additional RRC or early release;

f.  enjoining and restraining the defendants and all persons acting under their direction or authority or in active concert or participation with them, from enforcing, or from atttempting to enforce or cause to be enforced, by any administrative action the gate pass activity;

g.  preliminary enjoining and restraining the defendants from enforcing or causing to be enforced or attempting to enforce or cause to be enforced, by any administrative means, the gate pass activity;

h.  enjoining and restraining the defendants and all persons acting under their direction or authority or in active concert or participation with them, from refusing to provide inmates copies of the Form 409 and Form 210 relating to transfers, application of management variables, and RRC placement as such documents by policy are disclosable;

i.  Granting plaintiffs all other relief that is just and proper.

Respectfully submitted, this 21th day of November, 2018.

Respectfully,

/s/Angel M. Pagan, Reg # 12050-067

/s/Vladimir Cruz. Reg # 67398-050

/s/Edwin Michael Brown, Reg #13507-067

/s/Jaime Sanchez, Reg # 06704-104

12

EXHIBIT A

**INMATE REQUEST TO STAFF** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) | DATE: 2/7/18 |
|---|---|
| Mrs. Nevil | |
| FROM: Angel Pagan | REGISTER NO.: 12050067 |
| WORK ASSIGNMENT: N/A | UNIT: Gregg A 35 1U |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I am requesting that my MGTv be removed, please. I am also requesting that I be transferred to a camp since I am camp eligible and have camp points, please. Thank you for your time and patience.

(Do not write below this line)

DISPOSITION:

You will be referred for the Gate Pass work detail. If approved, a Management Variable of Work Cadre will be requested. After successfully completing the Gate Pass Program, you will be submitted for a transfer to a Minimum Security facility.

| Signature Staff Member | Date |
|---|---|
| C. Nevil | 2/13/18 |

Record Copy - File; Copy - Inmate

PDF                                    Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

# INMATE REQUEST TO STAFF CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Mrs. Nevil | DATE: 7-30-18 |
|---|---|
| FROM: Angel Pagan | REGISTER NO.: 12050 067 |
| WORK ASSIGNMENT: Gregg A Orderly | UNIT: Gregg A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

I would like to know the reason of why I can not be put in for a transfer to a camp? Why am I being obligated to do "Gate-Pass" in order to get a transfer, especially since I've been on the Gate-Pass waiting list for 3 months now? I've been Programing and have done everything that was asked of me.

**(Do not write below this line)**

DISPOSITION:

You were approved for participation in the Gate Pass Work Detail which is a program recommended/supported by Administration at LSCI Allenwood. You must successfully complete this program prior to be submitted for transfer to a minimum security facility. You remain on the waiting list until the next position becomes available. You currently have the Management Variable of Work Cadre which was approved by the Designation Center.

| Signature Staff Member C. Nevil | Date 7-31-2018 |
|---|---|

Record Copy - File; Copy - Inmate

PDF                                        Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

--------------------------------------------------------------------------------

FROM: LSCI Gregg Unit Management
TO: 12050067
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/09/2018 01:42:02 PM

You may address your concern to the Warden.

C. Rothermel, Unit Manager

>>> ~^!"PAGAN, ~^!ANGEL M" <12050067@inmatemessage.com> 7/31/2018 8:59 AM >>>
To: Mrs.Nevil
Inmate Work Assignment: Gregg A Orderly

I would like to know the reason of why I can not be put in for a transfer to a camp?Why am I being obligated to do "Gate-Pass" in order to get a transfer?Especially since I've been on the Gate-Pass waiting lost for 3months now.I've been programming and have done everything that was asked of me.

EXHIBIT B

------------------------------------------------------------------------------------------------------

FROM: LSCI Case Management Coordinator
TO: 12050067
SUBJECT: RE:***Inmate to Staff Message***
DATE: 11/15/2018 11:32:02 AM

You were approved for gate pass on or about April 20, 2018 but didn't start until August 13, 2018. Ordinarily, we give you credit for being on the waiting list, however, since you are releasing to a RRC in January 8, 2019, you will remain on gate pass until your release to the RRC. We will not have enough time to transfer you to a minimum security institution at this time.

B. Beaver, DCMC

>>> ~^!"PAGAN, ~^!ANGEL M" <12050067@inmatemessage.com> 11/10/2018 4:32 PM >>>
To: Mr.Beaver
Inmate Work Assignment: Gatepass

Mr. Beaver I am having a small situation and I was told that you are the one whom can help me with it. It's according to when I was put on the waiting list to go on Gate pass. I was told by Mrs.Nevil that I was on the waiting list for Gatepass,she told me that I was put on the waiting list in May 5. Mrs.Nevil recently she tells me that on record it says that I started in August which is true but the Warden said your time starts when you were put on the list. I just want to clarify this mistake and would appreciate it very much if you can fix it. I went to Mrs.Nevil and showed her a cop-out which she had said in her own words that I was on the waiting list the cop-out was dated July. She agrees but says that she is not authorized to change the date. She also said that the Captains Secretary doesn't have anything on records except the August date of when I started. All I am asking is that the dates be fixed. Please and Thank You.

# INMATE REQUEST TO STAFF

| TO:(Name and Title of Staff Member) Mr. Rothermel | DATE: 8-22-18 |
|---|---|
| FROM: Angel Pagan | REGISTER NO.: 12050067 |
| WORK ASSIGNMENT: Gate Pass | UNIT: Gregg A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Mr. Rothermel I would like to know if I can be put in for more halfway house time? I am currently 10 months to my out date without halfway house. Me and you agreed on being transfered to a camp after I was done with gate pass but instead I could use the extra halfway house to get myself situated and stable since I am homeless. I am asking you to please consider the halfway house time so that I may be able to go straight to the halfway house from here. I am only asking for 7 to 8 months halfway house time. Thank You.

(Continue on back if necessary)

DISPOSITION: (DO NOT WRITE below this line)

No. The recommendation is ISI 180 days

| Signature Staff Member | Date 8/23/18 |
|---|---|

## FEDERAL CORRECTIONAL COMPLEX
# Allenwood, Pennsylvania

### ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
### INFORMAL RESOLUTION FORM

**NOTE TO INMATE:** You are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-9 [BP-229(13)], you must ordinarily attempt to informally resolve your complaint through your Correctional Counselor. Briefly state **ONE** complaint below and list what efforts you have made to resolve your complaint informally and state the names of staff contacted.

Issued By: _BB_ (Initials of Correctional Counselor)
Date Issued To The Inmate: _8-2-18_

**INMATE'S COMMENTS:**

1. Complaint: I am requesting to be transferred to a camp as soon as possible so I can get the necessary skills and be able to re-establish my community ties, participate in pre-release programming prior to release. Consistent with PS 5100.08 & PS 7310.04, #8

2. Efforts you have made to informally resolve: Spoken with Unit Team
Cop-out

3. Names of staff you contacted: Ms. Nevill

Date Returned to Correctional Counselor: _8-7-18_

_Angel Pagan_ _Angel Pagan_ _12050-067_ _8-7-18_
Print Inmate Name    Inmate's Signature    Reg. Number    Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted: You are currently on the Crate Pads work detail waiting list. Upon successful completion of the Crate Pads work detail you will be transferred to a Minimum security facility, if time permits.

Date BP-9 Issued: _8-8-18_                        _B. Brown_  _C. Nevill, CSW_ _8-7-18_
                                                   Correctional Counselor

                                                   _Unit Manager (Date)_

**Distribution:** If complaint is **NOT** informally resolved - Forward original attached to BP-9 Form to the Administrative Remedy Clerk.

= Work Cadre – N/A.  Pursuant to Section 9(a)(1) of PS 7310.04 – Inmates who have been approved for CCC referral and are otherwise appropriate for camp placement SHALL be transferred to a camp for intermediate placement.  The inmate should have completed the Institution preparation program at the parent institution.  The parent institution shall complete the CCC referral packet and the camp should be close to the inmate's residence. This process should be allow the inmate a minimum of 60 day placement at a camp prior to the acceptance date at the CCC.

The above guidelines makes it clear that I am entitled to relief but for the arbitrary and capricious actions of the institution.

REMEDY

The response should address:

(1) when and how many inmates are approved for purported "gate pass"

(2) why are inmates being threatened to be put in the SHU if the do not participate in gate pass or being told that it is mandatory when there is no written policy or guidance regaring the program

(3) provide a copy of the approved policy at the regional level

(4)  why is the institution targeting minorities for "gate pass" only?

Lastly, I am requesting that my transfer for a camp be processed without further delay.

EXHIBIT C

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Pagan Angel      12050-067    Gregg A    LSCIALLENWOOD
       **LAST NAME, FIRST, MIDDLE INITIAL**      **REG. NO.**     **UNIT**     **INSTITUTION**

**Part A– INMATE REQUEST** Mr. Pagan is seeking review of the Unit Team's refusal to transfer him to a camp prior to release and forcing him to do "gate pass" in violation of policy. Moreover, Mr. Pagan requests a stay on his placement on "getpass" as such actions are arbitrary and capricious and done to stop him from pursuing his administrative remedy for relief. Mr. Pagan seeks an immediate transfer to a camp. Mr. Pagan was denied a transfer to a camp because of the institution's unwritten and unapproved policy of forcing inmates to do "gate pass." I never requested, nor do I want to participate in gate pass as there is no authorization for such program here. Gate pass is of no benefit to me. There are many other inmates who would volunteer for such position for various reasons. Moreover, rather than process Pagan's transfer to the camp, the institution arbitrarily requested a management variable of "work cadre" be assigned to me. While work cadre is assigned to inmates at some facilities without satellite camps, the Regional Director only authorized a certain number. It is obvious if approved that those numbers have been exceeded since Pagan has been on a waiting list (that he never asked to be put on) for 3 months. Putting a management variable of work cadre and keeping me from getting re-entry skills and participating in community based transitional services offered at a camp, to return to the community is an abuse of authority and done without authorization, especially since Pagan has been given only a few months of halfway house. I am requesting a transfer to a camp as soon as possible. The work cadre management variable can esily be removed just as it was put on and there is no mandated length of time to remove it. See PS 5100.08 – Work Cadre – N/A. Pursuant to Section 9(a)(1 of PS 7310.04 – Inmates who have been approved for CCC referral and are otherwise appropriate for camp placement SHALL be transferred to a camp for intermediate placement. The inmate should have completed the Institution preparation program at the parent institution. The parent institution shall complete the CCC referral packet and the camp should be close to the inmate's residence. This process should be allowed the inmate a minimum of 60 day placement at a camp prior to the acceptance date at the CCC. 8-9-10 Based on the guidance above, I am requesting to be transferred to a camp.

    **DATE**                          *Angel Pagan*    **SIGNATURE OF REQUESTER**

**Part B– RESPONSE** See PS 5100.08 and PS 7310.04

See attached

Rec'd 8/16/13 mf B of 4
     **DATE**                                **WARDEN OR REGIONAL DIRECTOR**

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**SECOND COPY: RETURN TO INMATE**        **CASE NUMBER:** 950458-F1

                                        **CASE NUMBER:** _____

**Part C– RECEIPT**

Return to: _____
           **LAST NAME, FIRST, MIDDLE INITIAL**      **REG. NO.**      **UNIT**      **INSTITUTION**

SUBJECT: _____

_____             _____
      **DATE**                           **RECIPIENT'S SIGNATURE (STAFF MEMBER)**

                       PRINTED ON RECYCLED PAPER                              **BP-229(13)**
                                                                     **APRIL 1982**

USP LVN

## Part B - Response

This is in response to your Request for Administrative Remedy received on August 16, 2018, where you request transfer to a minimum security level facility and that you not be assigned to the Gate Pass work detail.

A review of your case revealed you arrived at the Low Security Correctional Institution, Allenwood, Pennsylvania, on February 9, 2017, as a Lesser Security Transfer from the Federal Correctional Institution, Schuylkill, Pennsylvania. You are currently serving a 57-month term from the Middle District of Pennsylvania for Felon in Possession of a Firearm and Possession w/Intent to Distribute. You currently have a projected release date of June 29, 2019, via Good Conduct Time release procedures. You have a Custody Classification score of 8 points, with the Work Cadre Management Variable applied to your case. You have been determined to be appropriate for assignment to the institution Work Cadre detail. The applied Management Variable has no expiration date. You previously indicated a desire to work and earn money which would aid you with your upcoming release needs. Through placement on the Gate Pass work detail, you will have the ability to work and save money to assist you with your release needs. In addition, your Unit Team has made a Residential Re-Entry Center placement recommendation of 151-180 days. Based upon the determination of an appropriate placement date, your case will continue to be reviewed by your Unit Team. At this time you will continue to be confined at the LSCI Allenwood with the work assignment of Gate Pass.

Therefore, based on the above information, your Request for Administrative Remedy is denied.

If you are not satisfied with this response, you may appeal to the Regional Director, Federal Bureau of Prisons, Northeast Regional Office, U.S. Customs House, 2nd and Chestnut Streets, 7th Floor, Philadelphia, Pennsylvania, 19106, within 20 calendar days of this response.

8/22/18
_____
Date

_____
D. K. White
Warden for

PAGAN, Angel
Reg. No.: 12050-067
Gregg Unit
LSCI Allenwood
Page 1

## Inmate Request to Staff Response

This is in response to your letter dated February 16, 2018, received by my office. In your letter, you are requesting you not be submitted for "Gate Pass."

You currently have a projected release date of June 29, 2019, via Good Conduct Time release procedures. You currently have a detainer lodged against you by the State of Pennsylvania Lebanon County Sheriff's Department for Failure to Appear, Docket No. CP=38-0000287-2015. Due to this detainer you are not eligible for "Gate Pass" or any other type of community based programming to include Residential Re-Entry Center placement consideration. You are currently classified with 10 points and have had the Greater Security Management Variable applied to your case as a result of the detainer.

I trust this information has addressed your concerns.

_____
Date

_____
D. K. White
LSCI Allenwood Warden

EXHIBIT D

# Regional Administrative Remedy Appeal

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Pagan, Angel     13080-067     Group A     LSCI ALLENWOOD

     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL** Mr. Pagan is seeking review of the warden/unit team's refusal to transfer him to a camp or release and forcing him into so "work cadre" in violation of policy. As provided in the Warden's Response he refuses to address the point of authority and violation of policy and recites facts not relevant to the inquiry. Mr. Pagan requests a stay on his placement on "status" as such actions are arbitrary and capricious and unwarranted, and thus prior to a camp as the institution goes to minimums. Mr. Pagan seeks an immediate transfer to a camp. Mr. Pagan requested a transfer to a camp because of the institution remaining in custody in an unproven policy or forcing inmates to accept same. I never requested, nor do I want to participate in this job or there is no authorization for such forced job. I was threatened with being put in the SHU if I refuse. But I was told to submit to it. There are many other inmates who would volunteer for such position for various reasons. It's worth noting the institution have certainly given incentives or perhaps and the institution blames the inmate instead of inherent responsibility. However, rather than prohibit Pagan's transfer to a camp, the institution additionally receives a monetary variable of work cadre to be applied to me without my consent. While work cadre is assigned to inmate at some facilities without similar duty, the Regional Director only authorizes a certain number. It is obvious the institution has over extended since Pagan has been on a waiting list (that he never asked to be put on) for 3 months. Adding a monetary variable for work cadre and keeping me from getting re-entry skills and participation to complete such transitional services. Officers at a camp, or return to the community is an abuse of authority and done without authorization, especially since Pagan has only been given a few months of RRC. I am requesting a transfer to a camp as soon as possible. The work cadre duty variable can easily be removed just as it was put on and there is no mandated length of time to remove it. See PS 5100.00.

DATE 4-27-95    See continuation page 2       SIGNATURE OF REQUESTER

**Part B - RESPONSE**

 

 

DATE                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE          CASE NUMBER: **950458R1**

**Part C - RECEIPT**

                                        CASE NUMBER: _____

Return to: _____

         LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

    DATE                   SIGNATURE, RECIPIENT OF REGIONAL APPEAL

FPI-PEPR        PRINTED ON RECYCLED PAPER                      BP-230(13)
                                                            JUNE 2002

---

### Part B - Response

You appeal the response from the Warden at LSCI Allenwood regarding your request to be transferred to a camp. Specifically, you claim you are being compelled to participate in the Gate Pass program. You request a transfer to a Minimum Security facility.

Program Statement 5100.08, <u>Inmate Security Designation and Custody Classification</u>, permits staff to use professional judgment within specific guidelines in making classification decisions. Staff must consider all information available regarding the inmate to include security/custody level, institutional adjustment, population issues, safety concerns, etc. Custody scoring for program participation depends on the inmate's initiative in programming. The above policy also authorizes the use of Management Variables (MGVTs) when there is reasonable justification for housing an inmate in an institution not commensurate with his or her security level. Additionally, pursuant to Program Statement 5251.06, <u>Inmate Work and Performance Pay</u>, various factors, such as needs, eligibility, and security, are considered when staff determine work and/or program assignments.

A review of your appeal reveals the Warden adequately addressed your complaint. Your placement in the Gate Pass/Work Cadre Program at LSCI Allenwood was deemed appropriate based on institution need, your security level, and recent custody decrease. Furthermore, the Designation and Sentence Computation Center reviewed and approved the application of the Work Cadre MGTV. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date:   September 28, 2018        J. RAY ORMOND
                                  Regional Director

EXHIBIT E

Administrative Remedy
PAGAN, Angel M.   Reg # 12050-067

I wass denied a transfer to a camp because of the institution's unwritten and unapproved policy of forcing inmates to do gate pass.  I never requested, nor do I want to participate in "gate pass as it is of no benefit to me.  There are many other inmates who would volunteer for such position for various reasons.  Moreover, rather than process my transfer to the camp the institution arbitrarily requested a management variable of "work cadre" be assigned to me.  While work cadre are assigned to inmates at some facilities without satellite camps, the Regional Director only authorized a certain number.  It is obvious that the numbers have been exceeded since I have been on a waiting list (that I never asked to be put on) for 3 months.

Putting a management variable of work cadre and keeping me from getting re-entry skills and participating in community based transitional services offered at a camp to return to the community is an abuse of authority and done without authorization, especially since I have been given only a few months of half-way house.

I am requesting a transfer to a camp as soon as possible.  The work cadre manage-ment variable can easily be removed just as it was put on and there is no mandated length of time to remove it. See PS 5100.08 - Work Cadre - N/A

Pursuant to Section 9(a)(1) of PS 7310.04 - Inmates who have been approved for CCC referral and are otherwise appropriate for camp placement SHALL be transferred to a camp for intermediate placement.  The inmate should have completed the Institution Preparation Program at the parent institution.  The parent institution shall comp-lete the CCC referral packet and the camp should be close to the inmate's residence.  This process should be allow the inmate a minimum of 60 day placement at the camp prior to the acceptance date at the CCC.

Based on the guidance above, I am requesting to be transferred to a camp.

EXHIBIT F

**Central Office Administrative Remedy Appeal**

CN. 10|4|18

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: __PAGAN, ANGEL__ ___12050-067___ ___gregg___ ___LSCI ALLENWOOD___
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

**Part A—REASON FOR APPEAL** I am seeking review of the Regional Director's refusal to address the questions raised in my Appeal and the Warden's abuse of discretion and jeopardizing inmate safety. Mr. Pagan was forced to do "gate pass" a purported work assignment with no program statement or policy to support it. He was threated by staff that it is mandatory, and would be put in the SHU. Like many of the inmates, Mr. Pagan is eligible for Camp placement and this institution is abusing and discriminating minority inmates as well as jeopardizing their safety but putting on this gate pass program. The institution misrepresentation facts to the Regional Office and they simply accepted it rather than investigate this matter as they are required to do under the Administrative Procedure Act. Every program has a safety training and job outline. Where is the program statement and job information and safety procedures for this program? Mr. Pagan seeks immediate transfer to a camp and was discriminated against as well as arbitrary and capricious. I never requested, nor do I want to participate in gate pass as there is no authorization for such program here. I was threatened with being put in the SHU if I refused. Gate pass is of no benefit to me. There are many other inmates who would volunteer for such position for various reasons. Since there is no statute authority for me to do gatepass, I should not have been threatened or intimidated. It's worth nothing a number of inmates have been injured as a result of being on gate pass. The warden abuse his authority when staff lied on the Form 409 stating that inmates are voluntarily wanting on gatepass to get DSCC to approve the management variable. But for the misrepresentation, DSCC would not have approved a management variable.

__10-5-18__
DATE

SIGNATURE OF REQUESTER

**Part B—RESPONSE**

**RECEIVED**

NOV 0 5 2018

_____
DATE

ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL

CASE NUMBER: __950458 A1__

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT: _____

_____
DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

Administrative Remedy No. 950458-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal wherein you claim you are being forced to participate in
the Gate Pass Program and due to misrepresentation of facts, the
Designation and Sentence Computation Center (DSCC) applied a
management variable (MGTV). For relief, you request a transfer
to a camp.

We have reviewed documentation relevant to your appeal and,
based on the information gathered, concur with the manner in
which the Warden and Regional Director addressed your concerns
at the time of your Request for Administrative Remedy and
subsequent appeal. Pursuant to Program Statement 5100.08,
Inmate Security Designation and Custody Classification, staff
are permitted to use professional judgement within specific
guidelines when making classification decisions. Based on
institution need, your security level and recent custody
decrease, your placement in the Gate Pass/Work Cadre Program at
LSCI Allenwood was deemed appropriate. As such, the Designation
and Sentence Computation Center appropriately determined you
require the MGTV of Work Cadre.

Accordingly, your appeal is denied.


_____WO123118_____                    _____
Date                                  Ian Connors, Administrator
                                      National Inmate Appeals


**RECEIVED**

NOV 0 5 2018

Angel M. Pagan, Reg # 12050-067
Low Security Correctional Institution Allen(
P.O. Box 1000
White Deer, PA 17887

RECEIVED
SCRANTON

DEC 0 4 2018

PER _____
DEPUTY CLERK

LEGAL MAIL