## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL M. PAGAN, #12050-067; VLADIMIR CRUZ, #67398-050; EDWIN MICHAEL BROWN, #13507-067; JAIME SANCHEZ, #06704-104, | CIVIL ACTION NO. 1-18-CV-02317 |
| Plaintiffs, | (JONES, C.J.) |
| v. | (MEHALCHICK, M.J.) |
| DOUGLAS K. WHITE, Warden; J. RAY ORMOND, | |
| Defendants. | |

### REPORT AND RECOMMENDATION

The above-captioned plaintiffs ("Plaintiffs") commenced this action by filing an electronically-signed complaint on December 4, 2018, when they were inmates at the low-security Federal Correctional Institution at Allenwood ("FCI Allenwood"), seeking injunctive, declaratory, and habeas relief stemming from an allegedly unconstitutional "GatePass" program at FCI Allenwood. (Doc. 1). After commencing this action and throughout a protracted and convoluted procedural history, Plaintiffs repeatedly failed to comply with several Orders directing them to file a single, unified amended complaint and directing Brown and Pagan to show cause why any claims brought by them should not dismissed as moot. (Doc. 40; Doc. 45; Doc. 47). In June 2020, the undersigned granted Plaintiffs one more opportunity to file an amended complaint, hand-signed by each Plaintiff who wishes to proceed in this action, without reference to the original complaint or any other submissions filed by Plaintiffs. (Doc. 50). Plaintiffs did not file an amended complaint.

For the following reasons, given Plaintiffs' repeated failures to comply with Orders including Orders granting them leave to file an amended complaint – and because the original

complaint (Doc. 1), which remains the operative pleading, is not properly signed, includes moot claims, and fails to state a claim upon which relief may be granted – the undersigned respectfully recommends that the complaint (Doc. 1) be **DISMISSED WITH PREJUDICE**.

## I.    BACKGROUND

### A.    PROCEDURAL HISTORY

Since the filing of their complaint, which has yet to be served on defendants, Plaintiffs have repeatedly failed to comply with several Court Orders. First, Pagan filed a motion for leave to supplement the complaint to include a class of plaintiffs and certification of a class action. (Doc. 24). That motion was deemed withdrawn for Pagan's failure to submit a supporting brief. (Doc. 40). However, because Pagan could still file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure – and given that none of the original Plaintiffs had properly signed the complaint – the Court directed Plaintiffs to file an amended complaint under Fed. R. Civ. P. 15 within 21 days. (Doc. 40). In its Order, the Court cautioned that if no "amended complaint is timely filed . . . , this matter will proceed solely on the initial filing in this matter." (Doc. 40).

Plaintiffs did not file an amended complaint. Instead, Sanchez filed a letter requesting that he be stricken from the complaint as a plaintiff and seeking reimbursement of fees. (Doc. 41). Around the same time, the Court discovered that Brown and Pagan were no longer housed at FCI-Allenwood and may not have wished to proceed this action. Thus, the Court ordered Brown and Pagan to show cause why they should not be dismissed from this case as moot or for failure to file an amended complaint and directed any Plaintiffs who wished to proceed to file an amended complaint hand-signed by each Plaintiff. (Doc. 45). The Court noted that, alternatively, Plaintiffs could provide written notification of an intention to

withdraw this action. (Doc. 45). Finally, the Court stated that Plaintiffs' failure to respond to its Order "may result in the action being dismissed." (Doc. 45).

Neither Brown nor Pagan responded to the Court's show-cause Order, and none of the Plaintiffs filed an amended complaint. Sanchez filed another letter, signed only by Sanchez but bearing Cruz's name and the name of a new plaintiff, William Ortiz, writing:

> I am responding to your letter (order) regarding inmates here wanting to be [at a] lower custody. Being able to transfer to a Camp without doing gate pass. This institution makes it mandatory for inmates to do gate pass if they ever want to go to a Camp. Gate Pass is NOT a word cadre or part of an assignment stating it is mandatory Staff here should put us in as[]long as we have clear[]conduct and we are[]programming. I still want to remain in part of this lawsuit action. I understand Angel Pagan is gone and so is Edwin Michael Brown but there still is a lot of inmates here in Allenwood that would like to be transfer[red] to a camp or lower custody. We are seeking the Court[']s assistance to intervene and rule on this case.

(Doc. 46).

In a November 4, 2019 Order, the Court denied as moot Sanchez's application to be stricken from this action, granted the four originally named Plaintiffs' motions for leave to proceed *in forma pauperis*, and again granted them leave to file an amended complaint, due on November 25, 2019. (Doc. 47).[1]

Plaintiffs again failed to file an amended complaint. Rather than submitting an amended pleading, a new group of plaintiffs – i.e., Cruz, Sanchez, William Ortiz, and Edwin

---

[1] The Court also noted that Sanchez could not add William Ortiz as a plaintiff without complying with Federal Rule of Civil Procedure 15 and Local Rule 15.1, governing amended pleadings. Given the procedural posture of this matter, the Court noted its inability to make informed assessments regarding whether any of these putative plaintiffs should be joined as parties in this litigation under Rule 20. This rule, which governs permissive joinder of parties, provides in part that the court may allow joinder of plaintiffs when "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20.

Carasquillo – submitted a "Response to Order of November 4, 2019," signed by Cruz and

Sanchez and no one else. They wrote:

> We, the Plaintiffs named above, are camp eligible. There are a lot more inmates
> here at Allenwood LO[W] that are camp eligible with low custody points. The
> staff here is making us do Gate Pass as a mandatory job assignment if we would
> ever want to see a camp again. This is wrong since the Program Statement
> states "as long as the inmate is programming, has been incident report free
> (clear conduct) for the past 18 months, and has low custody points (11 points
> and under)" the inmate should be placed at a camp or OUT Custody detention.
> We are writing the Court to rule so the staff here can send all eligible inmates
> to Camps. Again, Gate Pass is not mandatory or required to do in order to go
> to a Camp. The BOP Program Statement has gate pass as a word cadre and it
> don't mention nothing as a mandatory assignment in order to go to a Camp
> afterwards. Please rule on this so a lot of inmates here can go to a camp.

(Doc. 48).

Then came the Court's most recent Order, dated June 22, 2020, which, as noted *supra*,

granted Plaintiffs leave to file an amended complaint. (Doc. 50). To date, Plaintiffs have not

filed an amended complaint or any filed any other submissions with the Court indicating they

wish to prosecute this action.

    B.  ORIGINAL COMPLAINT

Because Plaintiffs failed to file an amended complaint in accordance with the Court's

directives, the operative pleading remains the original complaint. (*See* Doc. 40; Doc. 45). In

that complaint, Plaintiffs alleged violations of 18 U.S.C. § 3624, their rights under the Fourth

Amendment, and the Administrative Procedures Act (APA). (Doc. 1, at 7-10). They seek

declaratory and injunctive relief against defendants Douglas K. White, in his official capacity

as Warden at FCI-Allenwood, and J. Ray Ormond, in his official capacity as Regional

Director of the Northeast Office of the Bureau of Prisons (BOP) (collectively, "Defendants").

(Doc. 1, at 1). The violations allegedly arise from a program referred to as "GatePass," which

Plaintiffs describe as inhibiting their ability to be transferred to a lower custody level,

4

depriving them of participating in incentive programs, and being contrary to statutory authority.

Plaintiffs allege that, in the absence of Gate Pass, they would be able to participate in supervised work and better prepare for their release from incarceration. (Doc. 1, at 5-6). The GatePass program also allegedly led to Defendants falsifying documents and performing excessive strip searches that subjected Plaintiffs to undue radiation. (Doc. 1, at 5-7). Pagan further alleges there is no institutional need for Gate Pass. (Doc. 1, at 5). Plaintiffs requested relief in the form of fair consideration to be transferred, ordering the elimination of the GatePass program, and access to various forms in their inmate files. (Doc 1, at 11-12).

## II. DISCUSSION

Having reviewed the original complaint (Doc. 1) and given the procedural history outlined above, the Court is compelled to dismiss Plaintiffs' complaint because: (1) Plaintiffs' failed to file a properly signed complaint; (2) the claims against Brown, Cruz, and Pagan, none of whom are presently incarcerated at FCI Allenwood, are all moot; and (3) Plaintiffs' original complaint does not contain allegations that, if true, state a claim upon which relief can be granted.

### A. PLAINTIFFS' FAILURES TO SIGN THE OPERATIVE PLEADING

Preliminarily, as the Court previously noted, Plaintiffs failed to "sign by hand" the original complaint in accordance with the Court's instructions. (Doc. 40, at 2 n.2 (citing *Beck v. Montgomery*, 532 U.S. 757, 764-65 (2001); Fed. R. Civ. P. 11; Fed. R. Civ. P. 5; Local Rule 5.6)).[2] By failing to file an amended complaint curing this deficiency in accordance with this

---

[2] The United States Supreme Court explained that the general Federal Rules of Civil

Court's Order, they have made "adjudication of the case impossible." *See Azubuko v. Bell Nat'l Org.*, 243 F. App'x 728, 729 (3d Cir. 2007); *see also Pruden v. SCI Camp Hill*, 252 F. App'x 436, 438 (3d Cir. 2007) (upholding the dismissal of a *pro se* plaintiff's complaint with prejudice for failure to amend his complaint). This is a particularly true here, where some Plaintiffs have ceased prosecuting the action without notifying the Court, one Plaintiff has moved to withdraw and then withdrew the motion to withdraw, new purported Plaintiffs continue to emerge without complying with Rule 15 and do not hand-sign any submission, and not one Plaintiff has complied with the Court's Orders granting leave to file an amended complaint.

Further, a balance of the six factors enumerated in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), militates in favor of dismissing this action. The six factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party . . . was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis*, 747 F.2d at 868 (emphasis omitted); *see* Fed. R. Civ. P. 41(b).

---

Procedure require plaintiff(s) to sign by hand any document submitted to the Court, but that the Federal Rules allow for electronic signatures when permitted by the Local Rules where the document is filed. *Becker v. Montgomery*, 532 U.S. 757, 764-65 (2001) (citing Fed. R. Civ. P. 11 and Fed. R. Civ. P. 5). The Third Circuit confirmed this interpretation of *Becker*. See *Johnson v. Rardin*, 700 Fed. App'x 170, 172 (3d Cir. 2017) (upholding document electronically signed by judge where local rules for Eastern District of Pennsylvania permitted judges to sign electronically). Here, Local Rule 5.6 permits electronic signatures on electronic filings, but mandates pro se litigants who are not registered users of the court's Electronic Case Filing system to file by paper. Therefore, because the local rules generally require pro se litigants to file by paper, and there's no specific allowance in the Local Rules for pro se litigants to sign a document other than by hand, the more general Federal Rules of procedure govern, and these pro se plaintiffs must sign by hand, per *Becker*.

Specifically, the fifth and six *Poulis* factors weigh heavily in favor of dismissal. The effectiveness of alternative sanctions weighs in favor of dismissal, as no viable alternative to dismissal exists given the absence of a properly signed operative pleading in this matter. Moreover, Plaintiffs bear full responsibility for failing to comply with the Court's Orders, and it has now been 20 months since Plaintiffs initiated this action and service of process has not yet been effectuated, which resulted from their various failures to comply.

  B.   Moot Claims Asserted By Brown, Cruz, and Pagan

  As the Court previously noted, a review of the BOP's inmate locator[3] reveals that Plaintiff Pagan was released on June 28, 2019, and Plaintiff Brown is now incarcerated at FCI-Danbury. (Doc. 45). A further search has revealed that Plaintiff Cruz is being held at RRM New York, which is "A Residential Reentry Management [] field office." Given the allegations in the complaint, including that Plaintiffs were subjected to an unconstitutional application of GatePass at FCI-Allenwood, the now-released Pagan no longer has a stake in this action for non-monetary relief. The same can be said of Brown and Cruz, neither of whom signed the original complaint or Sanchez's subsequent submissions to the Court. (*See* Doc. 46; Doc. 48). Indeed, Plaintiffs allege that GatePass prevented them from being placed in a residential reentry center (Doc. 1, at 7), and Cruz is now housed at such a center.

  In sum, by their silence in the face of the Court's previous Orders, failure to participate in prosecuting this action, and transfers out of FCI-Allenwood giving rise to these allegations, Brown, Cruz, and Pagan have demonstrated that the claims asserted by them are moot. *Debrew v. Auman*, 354 F. App'x 639, 641 (3d Cir. 2009) ("Our review of the record convinces

---

  [3] https://www.bop.gov/mobile/find_inmate.

us that the District Court properly determined that the claims for injunctive and declaratory relief became moot when plaintiff was transferred from the FCI in Loretto to the FCI in Petersburg.").

C. SCREENING OF THE ORIGINAL COMPLAINT

Plaintiffs' complaint also fails to state a claim for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**1. Legal Standard**

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 F. App'x 195, 197 (3d Cir. 2007) (not precedential). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis* and actions concerning prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 42 U.S.C. § 1997e(c)(1). *See generally Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 587-89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). In performing its mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

Rule 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), continuing with our opinion in *Phillips* [*v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)] and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). As the Supreme Court of the United States held in *Twombly*, in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether the complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Iqbal*, the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

9

According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Additionally, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nonetheless, every complaint, including that filed by *pro se* litigant, is subject to the pleading requirements as articulated in Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (internal quotation marks omitted).

## 2. Analysis

Initially, it is unclear the extent to which the allegations in the complaint form a basis for relief for Sanchez, the only named plaintiff whose claims are not moot, as opposed to the other Plaintiffs. The only specific allegations concerning any one plaintiff relate to Pagan, who has now been released from custody. (Doc. 1, at 5-6). The complaint reads as if it was written entirely by Pagan, as all the more specific allegations were written in the first person, or by reference to a singular "plaintiff." (Doc 1, 5-8). Every exhibit attached to the complaint

concerns Pagan's grievances and related proceedings. (Doc. 1, at 14-33). The remaining allegations are broadly stated and without reference to a particular Plaintiff or specific conduct taken by either Defendant. For this reason alone, Plaintiffs' allegations do not provide adequate notice under Rule 8, of the specific claims against Defendants and by whom the claims are asserted.

Turning to Plaintiffs' specific bases for relief, their claims under 18 U.S.C. § 3621 and § 3624(c) may more properly be the subject of a timely filed habeas corpus petition. In *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 237 (3d Cir. 2005), the Third Circuit held that a habeas petition was the proper mechanism for challenging regulations that limited a prisoner's placement in a community correction center (CCC) under 18 U.S.C. § 3621 and § 3624(c). Given that a CCC affords inmates an opportunity to reintegrate into society and have lenient policies "as compared to more traditional correctional facilities," the court in *Woodall* held that the matter of a transfer to a CCC is one that is properly understood as a challenge to the "execution" of the petitioner's sentence and therefore a subject for habeas review. *Woodall*, 432 F.3d at 243-44. So too do the instant Plaintiffs assert that they were denied the right to transfer to a camp where they could participate in incentive programs and prepare for release. (Doc. 1, at 34); *see Hicks v. Warden*, NO. 3:CV-16-2476, 2017 WL 4269407, *1 (M.D. Pa. September 26, 2017) (noting habeas relief is appropriate vehicle for a prisoner challenging placement in a residential reentry center); *Dorsey v. Angelini*, No. 4:07-CV-1092, 2008 WL 4279614, at *4 (M.D. Pa. Sept. 15, 2008) ("The BOP now refers to CCC's as Residential

Reentry Centers").[4]

Although Plaintiffs alternatively sought habeas relief here (Doc. 1, at 11), the fact that there are multiple plaintiffs – and specific allegations from only one – presents an impediment to the Court proceeding on this action as habeas petition because of the individualized nature of such actions. As already discussed, *supra*, it is also difficult to ferret out each Plaintiffs' allegations in the context of the claims they assert. Additionally, while Pagan alleged that he had exhausted his remedies and attached grievance-related exhibits to the complaint (Doc. 1, at 3, 14-33), no other Plaintiff referenced taking any steps towards exhausting remedies. Thus, even if the Court construed the complaint as a habeas petition, the petition would be dismissed for failure to exhaust; or, at the least, Plaintiffs would be directed to demonstrate cause as to why the petition should not be dismissed for failure to exhaust. *See Dorsey*, 2008 WL 4279614, at *3 (dismissing habeas petition where petitioner was "clearly challenging the BOP's discretionary decision with regard to his custody classification").

Regarding Plaintiffs' APA claims, they appear to be predicated on violations of 18 U.S.C. § 3621 and § 3624. However, the BOP's determinations under 18 U.S.C. § 3624 are "foreclosed from judicial review under the APA." *See McEwen v. Warden, FCI McKean*, No. CV 18-232, 2019 WL 2269939, at *3 (W.D. Pa. May 28, 2019) (citing 18 U.S.C. § 3625 ("The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not

---

[4] As the Court previously noted, whether Plaintiffs must seek relief through a habeas petition would have depended on the allegations they asserted in an amended complaint. *See, e.g.*, *Floyd v. Zickefoose*, No. CIV. 11-3593 JBS, 2012 WL 664808, at *8 (D.N.J. Feb. 29, 2012) (noting that *Woodall* is not controlling where, e.g., an inmate seeks a transfer between facilities at which he would be confined at the same security level). Because most of the allegations in the original complaint are Pagan's, the Court cannot determine whether other Plaintiffs' claims are more suitably asserted in a habeas petition.

apply to the making of any determination, decision, or order under [] subchapter [C of the Postsentence Administration statute, which subchapter includes 18 U.S.C. §§ 3621 and 3625].”); *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2010) (“There is no ambiguity in the meaning of 18 U.S.C. § 3625. The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701-706, do not apply to ‘any determination, decision, or order’ made pursuant to 18 U.S.C. §§ 3621-3624.”)). “[I]t has been recognized that suit under the APA is not available to a federal prisoner with respect to challenges to BOP decisions regarding inmate housing determinations.” *Murray v. Young*, No. 3:CV-12-1673, 2012 WL 5398628, at *1 (M.D. Pa. Nov. 5, 2012). Thus, Plaintiffs’ APA claim is statutorily foreclosed.

As to Plaintiffs’ Fourth Amendment claim based on allegations of excessive searches and full body scans that subject inmates to radiation (Doc. 1, at 9), construed liberally, this claim is brought pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), insofar as it asserts constitutional violations against federal officials. Before bringing a *Bivens* action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (“[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.”). “[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.” *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). As noted, *supra*, only Pagan indicated that he exhausted remedies prior to filing suit, and only Pagan attached as exhibits copies of documents relevant to exhaustion. Thus, because it does not appear that any other Plaintiff, namely Sanchez, exhausted administrative remedies before submitting the original complaint,

13

Plaintiffs' *Bivens* claims are subject to dismissal for failure to exhaust. Notably, no Plaintiff has demonstrated that they satisfy an exception to the exhaustion requirement.

As separate counts of their complaint, Plaintiffs seek declaratory and injunctive relief under Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. (Doc. 1, at 10-11). Given that the complaint has not been served on Defendants, together with the apparent lack of merit of Plaintiffs' claims as currently pleaded, there is no basis for granting this relief at this time. A movant seeking Rule 65 relief must show, among other things, a reasonable probability of success on the merits. *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994). For the reasons set forth in this Order, Plaintiffs have failed to demonstrate merit to warrant the "extraordinary remedy" of a preliminary injunction. *See, e.g., Rosa-Diaz v. Harry*, No. 1:16-CV-2303, 2017 WL 7038469, at *1 (M.D. Pa. Dec. 21, 2017), *report and recommendation adopted*, No. 1:16-CV-2303, 2018 WL 509741 (M.D. Pa. Jan. 23, 2018). Regarding Plaintiffs' 28 U.S.C. § 2201(a) claim, the record reflects no basis for awarding declaratory relief under that statute at this time. There are not enough specific factual averments on which to "declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C.A. § 2201(a).

## III.   LEAVE TO AMEND

The Court recognizes that *pro se* plaintiffs should generally be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, unless granting further leave to amend would be futile or result in undue delay. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007); *Alston v. Parker*, 363 F.3d 229, 235–36 (3d Cir. 2004). Given the circumstances concerning this action, the various deficiencies with the Plaintiffs' initial pleading, their failures to comply with several Court Orders, and the fact that

14

they have not stated a claim upon which relief may be granted, the undersigned recommends that the Court decline to grant Plaintiffs another opportunity to file an amended complaint.

## IV.   RECOMMENDATION

Based on the foregoing, the undersigned recommends that Plaintiffs' complaint (Doc. 1) be **DISMISSED WITH PREJUDICE**; and the Clerk of Court be directed to **CLOSE** this case.

**BY THE COURT:**

Dated: **August 20, 2020**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

15

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ANGEL M. PAGAN, #12050-067, et al.,

                          Plaintiffs,

        v.

DOUGLAS K. WHITE, et al.,

                          Defendants.

CIVIL ACTION NO. 1-18-CV-02317

(JONES, C.J.)
(MEHALCHICK, M.J.)

### NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **August 20, 2020**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **August 20, 2020**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

16